(117 App. Div. 890)

### In re MARX.

(Supreme Court, Appellate Division, Second Department. March 22, 1907.)

**1. WILLS—CONSTRUCTION—ESTATES ACQUIRED.**

A testator was a member of a firm which by agreement was to continue for a specified term, notwithstanding the death of either of the partners. He made bequests of household property and personal belongings, and provided that, subject to the firm agreement, his executor should sell the residue of his estate and receive the proceeds thereof and the proceeds of the firm business when wound up and the net income thereof, and bequeathed the same as follows: One third to his wife absolutely; one third to his executor in trust to pay the net income to her for life, with remainder to relatives; and the remaining third to relatives. *Held*, that the wife received an absolute third in the three funds composed of the proceeds of the residue, the proceeds of the firm business, and the net income thereof, and was entitled to the income of another third of such funds for life.

**2. SAME—ESTOPPEL—GROUNDS—CLAIMS OF LEGATEES.**

An adult legatee who received a substantial portion of testator's estate on a distribution, in conformity to a construction given to the will of the testator. was estopped from asserting that the will was erroneously construed and required a different basis for distribution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1717–1721.]

**3. EXECUTORS AND ADMINISTRATORS—PAYMENT OF TAXES.**

An executrix who has paid an inheritance tax to the federal government should not be surcharged to the amount thereof on it subsequently appearing that the tax was not a proper one, it being conceded that the sum paid may be recovered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 2065.]

Miller and Jenks, JJ., dissenting in part.

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account of Marga-rethe C. Marx, as executrix of Frederick Marx, deceased, against Sophie L. C. Nusted and others. From a decree of the Surrogate's Court (99 N. Y. Supp. 334, 49 Misc. Rep. 280), settling the accounts, the executrix, individually and as executrix, appeals. Reversed and remanded.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

Louis Marshall (Albert W. Venine, on the brief), for appellant.
R. D. Benedict, for respondents.

HOOKER, J. Consideration of this appeal requires the construction of the fifth paragraph of the will of the deceased. He died on the 24th day of November, 1901, after having been a member of the firm of Marx & Rawolle for upwards of 31 years. On May 9, 1900, Marx & Rawolle entered into an agreement to continue their copartnership for a further term of five years, and by that agreement an elaborate scheme was provided whereby the partnership should not cease upon the death of either or both partners during that five-year period, but should be continued in the event of the death of one partner by his executors or personal representatives, and might be so continued in the case of the death of both partners, in the discretion of the executors of both. By his will, the executors of Marx were given full power to continue the business, and were, by the second paragraph of the will, specifically directed to carry out the provisions of the partnership agreement, so far as the same might be legally done. After making certain bequests of household property and personal belongings, in the fourth paragraph of his will, the testator provided in the fifth paragraph thereof as follows:

"Subject to the provisions relative to my co-partnership business of Marx & Rawolle, I direct my executors hereinabove named, or such of them as shall qualify, to sell all the rest, residue and remainder of my estate, both real and personal, at public or private sale, on such terms as they shall deem best, and I hereby give them full power to grant and convey the same and to receive the proceeds thereof and also the proceeds of my said co-partnership business when wound up and the net income thereof, and I give and bequeath the same as follows:" (1) to his wife, the appellant, one-third absolutely; (2) to his executors, in trust, one-third, whose net income during her life should be paid to his wife, the remainder to go to certain of the relatives of the wife and the testator; and (3) the remaining one-third to go to certain of the testator's relatives.

There was no residuum of the testator's estate, except the copartnership business of Marx & Rawolle. The executors kept the estate invested in that copartnership business until July 5, 1905, when it was sold, and brought $283,809.55. From the time of the testator's death to the date of the sale, the net profit of the investment of the testator in the copartnership business amounted to $125,639.39. This latter amount the executrix received from the firm in installments from time to time, and as she received these moneys they were distributed among the various beneficiaries named in the will and its codicil, in accordance with what she supposed to be their provisions; that is, of this net income she took for herself one third absolutely, she took a second third as the life interest in a third of the testator's residuary estate, and the balance she divided among those of the testator's relatives who were mentioned in subdivision 9 of the fifth paragraph of the will and the codicil thereto.

The respondents maintain that because she has divided the income of the business in thirds, and distributed it as though it were income of the principal of the estate, the executrix has erred in her construction of the will. The provisions of the fifth paragraph are not ambiguous, and do not lack in clearness. The language is so plain that recourse should not be had to circumstances or collateral matters to determine the purpose of the testator. His intention is clearly defined in

that paragraph. Divested of the phrases and clauses unnecessary to be read in construing the subject-matter, it provides a direction to his executors to sell his residuary estate, subject to the provision in carrying on the partnership business, and they are given power to grant and convey the same and to receive the proceeds thereof, and to receive the proceeds of the partnership business when wound up, and the net income thereof—that is, they are given power to receive the proceeds of the net income of the partnership business—and he gives and bequeaths as thereinafter provided the same; that is, of course, the proceeds of the residuum, the proceeds of the copartnership business, and the net income. This last item he directed should be distributed in the manner thereafter provided, which was the same method provided to govern the distribution of the proceeds of the partner. It seems clear, therefore, that the net income from the partnership business was to be treated as part of the principal fund of the decedent's estate, and it was to be divided along with and in the same manner as the residuum and the proceeds of the partnership business. This construction would give to the widow (1) an absolute third in all three funds; and (2) the income during her life of the residuum, the proceeds of the estate when wound up, and the net income thereof— that is, she is entitled to the income of a third of the net income of the copartnership business. Such is, in our opinion, the true construction of the will, for the meaning of the fifth paragraph is plain and unambiguous, and the infants should receive that portion of the estate to which they are entitled under this construction. The legatees, who were infants at the time of the testator's death, and who have attained their majority since then, may or may not have ratified a practical construction theretofore placed upon the will contrary to the view we adopt of the testator's intent. As to that the record is silent. But, as to the adults, they seem now to have been estopped from asserting that the construction placed for the past five years upon this will by the executrix and by themselves is the true one. So far as the record shows, a substantial portion of the estate has been actually distributed and received by most, if not all, of the adult legatees prior to the filing of the final account, and in conformity with the construction given to the will by the executors. They are therefore estopped from asserting a different basis of distribution. Chipman v. Montgomery, 63 N. Y. 221, 334, 335.

The executrix has paid a tax of $633.54 to the federal government, which now seems not a proper charge against the estate. It seems to be admitted by counsel for both sides of this controversy that the sum paid may be recovered back, under the law as interpreted in Tilghman v. Eidman (C. C.) 131 Fed. 651. While we might consider the direction of the learned surrogate that this amount be surcharged equivalent to a direction that the executrix should seek to recover this amount back and that such course should be pursued, we are of opinion that the surrogate erred in charging this amount personally against the executrix.

The decree of the surrogate should therefore be reversed, and the proceeding remanded to the Surrogate's Court for further considera-

tion in accordance with the views here expressed, with one bill of costs payable out of the estate to the appellant, and one bill to the respondents. All concur, except MILLER and JENKS, JJ., who dissent.

MILLER, J. (dissenting). I agree with the conclusion that the surrogate erred in surcharging the account of the executrix with the amount of the federal inheritance tax paid by her, but cannot assent to the proposition that the fifth clause of the will is too plain to admit of construction. Disconnected from its context and literally construed, with reference solely to its grammatical construction, it doubtless warrants the interpretation about to be adopted by this court; but I think the entire will, illumined by such circumstances as we have a right to consider, reveals the testator's purpose so clearly that it is our duty to give it effect in spite of inapt or inaccurate modes of expression. Phillips v. Davies, 92 N. Y. 199.

The residuary estate, the subject of this controversy, consisted of the testator's interest in the assets of the firm composed of himself and Frederick Rawolle. Shortly before making his will the testator and his said partner entered into new articles renewing the partnership for the definite term of five years from January 1, 1900, and by a supplemental agreement indorsed thereon, which we held applied to the entire articles (Matter of Marx, 106 App. Div. 212, 94 N. Y. Supp. 151), the term was extended so as to expire January 1, 1906. It is plain that the primary purpose of said new articles was to provide for the continuance of the business in case of the death of one or both of the partners, for said articles contained explicit provisions to that end, and the apprehension of each was justified by the event, for the testator died November 24, 1901, and his said partner May 18, 1903. Said articles explicitly referred to the interest of each partner as capital invested by him, and provided that the capital should be kept unimpaired, and that the profits or losses should be ascertained and divided on January 1st of each year, in the manner stated. The testator was childless, and it is plain that the first object of his solicitude was his aged wife. We come now to the provisions of the will.

In the first clause the testator authorized his executors to make investments and reinvestments "including the right to purchase and continue the business" theretofore conducted by him with said Rawolle. In the second clause he directed them to carry out said partnership agreement. The third and fourth clauses are not now material. In the fifth he disposed of his residuary estate. Omitting, for the present, consideration of the language requiring construction, the property which he had in mind was disposed of by four subdivisions, L, M, N, and O, respectively, as follows: (L) one third to his wife absolutely; (M) one sixth to his executors, in trust to pay the income to his wife during her life, remainder to her sisters and a brother; (N) one sixth to his executors, in trust to pay the income to his wife during her life, remainder to his own sisters and a brother. (O) The remaining third to his said sisters and brother. Said brother having died leaving a son, who had a son and six daughters, said testator added a codicil to his will, in which he stated

103 N.Y.S.—29

it to be his "particular desire" to provide for the support, maintenance, and education of his said grandnieces, and provided, among other things, that one-half of that portion of his estate, which otherwise would have been paid to his said nephew, should be invested and the income paid to said grandnieces until each attained the age of 21. It cannot be doubted that the testator intended that his aged wife and the grandnieces, for whose education he was solicitous, should have the immediate enjoyment of the provision for their benefit. He certainly did not intend to postpone such enjoyment until death had intervened in the one case, or the time for education had passed in the other; nor is it easy to suppose that in giving his wife the net income of a third he really intended to limit her to income on the net income of a third. I quote the language which is claimed to require that result:

"Fifth. Subject to the provisions relative to my copartnership business of Marx & Rawolle, I direct my executors hereinabove named, or such of them as shall qualify, to sell all the rest, residue and remainder of my estate, both real and personal, at public or private sale, on such terms as they shall deem best, and I hereby give them full power to grant and convey the same and to receive the proceeds thereof and also the proceeds of my said copartnership business when wound up and the net income thereof, and I give and bequeath the same as follows."

It must not be overlooked that the residuary estate and the interest in the copartnership business were identical, that, as evidenced both by the will and the partnership articles, the testator considered said interest as an investment, which he directed his executors to continue, and he was not amiss in treating the continuance of the partnership business by the executors as an investment by them of his residuary estate, for so the courts have treated similar directions. Matter of McCullum, 80 App. Div. 362, 80 N. Y. Supp. 755; Johnson v. Lawrence, 95 N. Y. 154; Bell v. Hepworth, 134 N. Y. 442–448, 31 N. E. 918; C. W. Co. v. Hodenpyl, 135 N. Y. 430–434, 32 N. E. 239; Ferry v. Laible, 31 N. J. Eq. 566–579. The will speaks from the death of the testator, and I think it plain from what has already been said that the testator intended to give his wife one third of his residuary estate absolutely, and the use of another third, and that his purpose was not frustrated by the direction for the continuance of said business. The respondents do not argue that the income from said business was not to be withdrawn until the business was wound up. They concede that it was to be received annually as the partnership articles provided, but insist that when received said income was to be treated, not as income, but as additions to the corpus of the estate, to be distributed and invested accordingly. If they are right in this contention, it cannot be doubted that the will provided for an unlawful accumulation of the income, of which the widow had the life use. Thorn v. De Breteuil, 86 App. Div. 405, 83 N. Y. Supp. 849; Id., 179 N. Y. 64, 71 N. E. 470. The only warrant for their contention is the assumption that the words "copartnership business" and "net income thereof" are the antecedents of the pronoun "same" following. I think said pronoun has the same antecedent as the preceding "same," to wit, "all the rest, residue and remainder of my estate"; that is,

what the testator clearly had in mind in making the provisions L, M, N, and O, and the fact that the draughtsman made a bungling sentence by putting too many parenthetical expressions between the pronoun and its antecedent should not stand in the way of a clearly expressed intention. The books are full of cases, which I need not cite, in which the courts have gleaned the intention of the testator from less apt language than that now being considered; but, if sense is to yield to strict grammatical construction, and if the word "same" does refer to the "proceeds of the copartnership business and the net income thereof," then I think the expression is to be read distributively as the learned counsel for the appellant contends, and that the testator meant to dispose of said "proceeds" as principal and the "net income thereof" as income in the manner in which he subsequently directs the disposition of principal and income, income not to be invested but to be paid out as "income." In any view, the construction adopted by the executrix and long acquiesced in by the interested parties was correct.

JENKS, J., concurs.